921 So.2d 538 (2005)
STATE of Florida, Petitioner,
v.
Alfredie STEELE, Respondent.
No. SC04-802.
Supreme Court of Florida.
October 12, 2005.
As Revised on Denial of Rehearing February 2, 2006.
*539 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Candance M. Sabella, *540 Assistant Attorney General, Chief of Capital Appeals, Tampa, FL, for Petitioner.
Robert Dillinger, Public Defender and Joy Goodyear, Assistant Public Defender, Sixth Judicial Circuit, Dade City, FL, for Respondent.
CANTERO, J.
In this case, we consider two issues resulting from the United States Supreme Court's decision concerning capital sentencing in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002): whether a trial court may require the state to notify the defendant of the aggravating factors on which it intends to rely, and whether a trial court may require the jury to specify each aggravating factor it finds, and the vote as to each.
In Ring, the Supreme Court held that in capital sentencing schemes where aggravating factors "operate as `the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Id. at 609, 122 S.Ct. 2428 (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The effect of that decision on Florida's capital sentencing scheme remains unclear. In Florida, to recommend a sentence of death for the crime of first-degree murder, a majority of the jury must find that the State has proven, beyond a reasonable doubt, the existence of at least one aggravating circumstance listed in the capital sentencing statute. See § 921.141(2)(a), Fla. Stat. (2004). It must also find that any aggravating circumstances outweigh any mitigating circumstances, also listed in the statute, that may exist. See § 921.141(2)(b), Fla. Stat. (2004). Since Ring, this Court has not yet forged a majority view about whether Ring applies in Florida; and if it does, what changes to Florida's sentencing scheme it requires. See, e.g., Windom v. State, 886 So.2d 915, 936-38 (Fla.2004) (Cantero, J., specially concurring) (explaining the post-Ring jurisprudence of the Court and the lack of consensus about whether Ring applies in Florida). Cf. Johnson v. State, 904 So.2d 400 (Fla.2005) (holding that Ring does not apply retroactively in Florida). That uncertainty has left trial judges groping for answers. This case is an example. The Second District Court of Appeal certified to us two questions of great public importance:
(1) Does a trial court depart from the essential requirements of law, in a death penalty case, by requiring the state to provide pre-guilt or pre-penalty phase notice of aggravating factors?
(2) Does a trial court depart from the essential requirements of law, in a death penalty case, by using a penalty phase special verdict form that details the jurors' determination concerning aggravating factors found by the jury?
State v. Steele, 872 So.2d 364, 365 (Fla. 2d DCA 2004). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer "no" to the first question and "yes" to the second. We hold that under current law, a trial judge presiding over a case in which the death penalty is possible does not depart from the essential requirements of law by requiring the State to provide pretrial notice of the aggravators it intends to prove in the penalty phase. We also hold, however, that a judge does depart from the essential requirements of law by requiring a majority of jurors to agree that a particular aggravator applies. Such a requirement imposes a substantive burden on the state not contained in the statute and not required by Ring.

I. FACTS AND PROCEDURAL HISTORY
The defendant, Alfredie Steele, was indicted for first-degree murder with a firearm, *541 a crime for which the potential sentence is death. He filed a motion to have Florida's capital sentencing scheme declared unconstitutional under Ring. In a hearing on the motion, the trial court and respective counsel discussed Ring's potential effect on Florida's capital sentencing statute. Defense counsel acknowledged that in considering challenges based on Ring, this Court had not reversed any death sentences or held Florida's capital sentencing scheme constitutionally infirm.
The trial judge denied the motion to preclude imposition of the death penalty, but did impose several requirements to address concerns with Florida's scheme that our post-Ring decisions had left unresolved. The court required the State to provide advance notice of the aggravating factors on which it intended to rely if the case reached a penalty phase. The court also stated that she would submit to the jury a penalty-phase interrogatory verdict form that would require jurors to specify each aggravator found and the vote for that aggravator. The court's subsequent order ruled that the jury would be required to find each aggravator by majority vote.
The State filed a petition for a writ of certiorari with the Second District Court of Appeal, challenging the requirements of pretrial notice and a penalty-phase special verdict. The district court granted the petition in part and denied it in part. The court quashed that portion of the order requiring advance notice of the aggravating factors, relying on this Court's precedent holding that the list of aggravators provided in section 921.141(5), Florida Statutes (2004), is sufficient, and that Ring does not require specific pretrial notice. See Steele, 872 So.2d at 365. However, the court denied the petition as to the trial court's requirement of specific findings of aggravators on the verdict form. It concluded that "Florida law does not specifically prohibit a trial judge from using a special verdict form such as the one ordered here." Id. Anticipating that its ruling "could affect many cases that may ultimately be reviewed by" this Court, the court certified the foregoing questions of great public importance. Id. Its mandate was stayed pending our review.

II. ANALYSIS
This case comes to us on review of the district court's ruling on a petition for a writ of certiorari challenging a pretrial order in the circuit court. In certifying the two questions of great public importance, the district court appropriately applied the standard of review applicable to pretrial petitions for writ of certiorari that is, whether the order constitutes a departure from the essential requirements of law. We have stated that
the phrase "departure from the essential requirements of law" should not be narrowly construed so as to apply only to violations which effectively deny appellate review or which pertain to the regularity of procedure. In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari. *542 Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983); see also Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) (noting that "the departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error"); State v. Pettis, 520 So.2d 250, 254 (Fla. 1988) (concluding that although a pretrial ruling was in error, "we cannot say that the ruling was a departure from the essential requirements of law").
We now consider whether the trial court departed from the essential requirements of law in (A) requiring the State to provide pretrial notice of the aggravators on which it would rely; and (B) requiring a special jury verdict form in which, before the jury could recommend a sentence of death, a majority would have to agree that a specific aggravator applied. Finally, in section (C), we compare the current scheme in Florida to those in the other states that impose the death penalty, and suggest revisions to our statute that would render Florida's scheme consistent with that of every other death penalty state.

A. Pretrial Notice of Aggravating Factors
The first certified question asks, Does a trial court depart from the essential requirements of law, in a death penalty case, by requiring the state to provide pre-guilt or pre-penalty phase notice of aggravating factors? The State argues that requiring advance notice of alleged aggravating factors conflicts with our prior holdings that advance notice of aggravators is not required. The State also argues that advance notice is unnecessary in light of the information provided through reciprocal discovery.
The State is correct that we have consistently held that the lack of notice of specific aggravating circumstances does not render a death sentence invalid. See Sireci v. State, 399 So.2d 964, 970 (Fla.1981), overruled on other grounds as recognized in Rutherford v. State, 545 So.2d 853, 856 (Fla.1989). In Hitchcock v. State, 413 So.2d 741, 746 (Fla.1982), we concluded that because "[t]he statutory language limits aggravating factors to those listed, ... there is no reason to require the state to notify defendants of the aggravating factors that the state intends to prove." We reaffirmed this principle both before Ring, see Cox v. State, 819 So.2d 705, 725 (Fla. 2002); Vining v. State, 637 So.2d 921, 927 (Fla.1994), and after, see Kormondy v. State, 845 So.2d 41, 54 (Fla.), cert. denied, 540 U.S. 950, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003); Lynch v. State, 841 So.2d 362, 378 (Fla.), cert. denied, 540 U.S. 867, 124 S.Ct. 189, 157 L.Ed.2d 123 (2003). In Kormondy, in fact, we noted that "Ring does not require either notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury." 845 So.2d at 54. In concluding that requiring the State to provide advance notice of aggravators constitutes a departure from the essential requirements of law, the district court relied on our statement in Vining that there "is no reason to require" the notice, and on our reiteration in Kormondy, after Ring, that notice was not required. Steele, 872 So.2d at 365. But that is not the precise question here.
The question we address in this case is really the other side of the coin from the one we addressed in Kormondy, Vining, and other cases. In those cases, the defendants alleged that, to comply with constitutional requirements, judges must require the State to provide notice of the aggravating factors on which it intends to rely. We rejected that argument. Here, on the other hand, we consider whether a judge may require such notice without *543 violating a clearly established principle of law.
Although it is clear that no statute, rule of procedure, or decision of this Court or the United States Supreme Court compels a trial court to require advance notice of aggravating factors, it is equally clear that none prohibits it, either. Moreover, the justification for it is stronger now than when we decided Hitchcock and Sireci. At the time we decided those cases, the capital sentencing statute contained only six aggravators. Since then, the Legislature has added eight more. See § 921.141(5)(i), Fla. Stat. (2004) (murder was cold, calculated, and premeditated); § 921.141(5)(j) (victim was law enforcement officer engaged in performance of duties); § 921.141(5)(k) (victim was elected or appointed public official engaged in performance of duties); § 921.141(5)(l) (victim was less than twelve years of age); § 921.141(5)(m) (victim was especially vulnerable because of advanced age or because defendant stood in position of familial or custodial authority); § 921.141(5)(n) (perpetrator was criminal street gang member). Other aggravators have been given broader scope. For example, the aggravating factor in section 921.141(5)(a) now applies to defendants who commit murder while on probation or community control, not merely while under a sentence of imprisonment. See ch. 96-290, § 5, Laws of Fla. (adding community controllees); ch. 91-270, § 1, Laws of Fla. (adding probationers). Also, aggravated child abuse and elder abuse have been made crimes qualifying a capital defendant for the "prior violent felony" aggravator in section 921.141(5)(d). See ch. 96-302, § 1, Laws of Fla. (adding elder abuse); ch. 95-159, § 1, Laws of Fla. (adding aggravated child abuse). Thus, the notice provided by the list of aggravators in the statute is broader, and therefore less specific, than when we addressed the issue in Hitchcock and Sireci. Because of the expansion in available aggravating circumstances, as well as the absence of any express prohibition on requiring advance notice of aggravators, we conclude that a trial court does not violate a clearly established principle of law in requiring the State to provide such notice. Whether to require the State to provide notice of alleged aggravators is within the trial court's discretion.
Nor does the requirement of advance notice constitute a miscarriage of justice. Under Florida's broad discovery rule, the State already must disclose the names of witnesses, statements, test results, and other information about its case. See Fla. R.Crim. P. 3.220(b)(1). A list of the aggravators the State plans to establish during the penalty phase does not impose a substantial-or substantive-additional burden.
The State argues that a notice requirement is inequitable because the defense is not required to notify the State of mitigating circumstances. We note substantive differences, however, between proving aggravating circumstances and proving mitigators. To obtain a death sentence, the State must prove beyond a reasonable doubt at least one aggravating circumstance, whereas to obtain a life sentence the defendant need not prove any mitigating circumstances at all. Cf. Henyard v. State, 689 So.2d 239, 249-50 (Fla. 1996) (holding that a jury is not compelled to recommend death where aggravating factors outweigh mitigating factors). Moreover, the defendant may invoke "[t]he existence of any other factors in the defendant's background that would mitigate against the imposition of the death penalty." § 921.141(6)(h), Fla. Stat. (2004); see also Ford v. State, 802 So.2d 1121, 1138 (Fla.2001) ("We adopted the [U.S. Supreme Court's] definition of a mitigating circumstance: `any aspect of a defendant's *544 character or record and any of the circumstances of the offense' that reasonably may serve as a basis for imposing a sentence less than death") (Pariente, J., concurring in result only) (quoting Campbell v. State, 571 So.2d 415, 419 n. 4 (Fla.1990), receded from in part by Trease v. State, 768 So.2d 1050 (Fla.2000)). The State, on the other hand, is limited to the specific aggravating factors listed in section 921.141(5). See Miller v. State, 373 So.2d 882, 885 (Fla. 1979) (noting that "[t]he aggravating circumstances specified in the [Florida] statute are exclusive, and no others may be used for that purpose") (citing Purdy v. State, 343 So.2d 4, 7 (Fla.1977)). Therefore, even if it could be required, pretrial notice of specific nonstatutory mitigation could prove unwieldy. Nevertheless, because in this case the State did not request pretrial notice of the mitigating factors on which the defendant would rely (instead arguing that the State should not be required to provide notice), we need not decide here whether a trial judge's refusal to require reciprocal discovery would violate the essential requirements of the law.
For these reasons, our answer to the first certified question is "no." A trial judge does not depart from the essential requirements of the law by requiring the State to provide notice of the aggravators on which it intends to rely. We add, however, that under current law the trial court cannot prohibit the State from relying on an aggravator that was either undisclosed or disclosed beyond the deadline. As counsel for the respondent acknowledged at oral argument, any violation will at most justify a continuance to allow the defendant to rebut or impeach the State's evidence.

B. Special Verdict on Aggravating Factors
The second certified question asks, Does a trial court depart from the essential requirements of law, in a death penalty case, by using a penalty phase special verdict form that details the jurors' determination concerning aggravating factors found by the jury? Again, because of the narrow standard of review, we must determine whether the order violates a clearly established principle of law resulting in a miscarriage of justice.
We begin to answer this question by reviewing the applicable law. Section 921.141 does not require jury findings on aggravating circumstances, and we have held that Ring does not require special verdicts on aggravators. See Kormondy, 845 So.2d at 54. Nevertheless, the trial court ruled that jurors would receive a special verdict form on which they would specify the aggravators they found to exist and the vote on each aggravator. The court established this procedure to protect against reversal of a death sentence based on Ring, to obtain the jury's guidance in fulfilling the court's independent statutory duty to consider and weigh the proposed aggravators, and to facilitate appellate review.
The preliminary special interrogatory verdict form the trial court prepared requires the jury to record its vote on each aggravating circumstance submitted. In its order, the court required that, as to each aggravating circumstance alleged, the jury determine by majority vote whether a particular aggravator existed. The court noted that it would develop jury instructions later. The district court, in declining to quash the order, observed that "Florida law does not specifically prohibit a trial judge from using a special verdict form such as the one ordered here." Steele, 872 So.2d at 365.
The State argues that the special verdict conflicts with Florida's capital sentencing *545 statute and the standard jury instructions, which only require that, to recommend a sentence of death, a majority of the jury conclude that at least one aggravating circumstance exists-not necessarily the same one. Thus, the State contends, the trial court's special verdict imposes an extra statutory requirement for imposition of the death penalty. The State also argues that because we have held that a special verdict is not required and have not ruled any aspect of Florida's capital sentencing statute unconstitutional under Ring, the trial court's action constituted a departure from the essential requirements of law. We think the State's argument well taken.
Section 921.141, Florida Statutes (2004), establishes the obligations of the judge and jury concerning aggravating circumstances during a capital penalty phase:
(2) Advisory sentence by the jury.-After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
(3) Findings in support of sentence of death.Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and
(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
§ 921.141(2)-(3), Fla. Stat. (2004). Consistent with these provisions, the standard jury instructions require the jury to determine whether one or more aggravating circumstances exists, and if so, to weigh any aggravators against any mitigating circumstances. See Fla. Std. Jury Instr. (Crim.) 7.11, at 132-33. The instructions also provide that the jury's advisory sentence need not be unanimous, that a majority vote is necessary for a death recommendation, and that a vote of six or more jurors is necessary for a life recommendation. See id. at 133.
Under the law, therefore, the jury may recommend a sentence of death so long as a majority concludes that at least one aggravating circumstance exists. Nothing in the statute, the standard jury instructions, or the standard verdict form, however, requires a majority of the jury to agree on which aggravating circumstances exist. Under the current law, for example, the jury may recommend a sentence of death where four jurors believe that only the "avoiding a lawful arrest" aggravator applies, see § 921.141(5)(e), while three others believe that only the "committed for pecuniary gain" aggravator applies, see § 921.141(5)(f), because seven jurors believe that at least one aggravator applies. The order in this case, however, requires a majority vote for at least one particular aggravator. This requirement imposes on the capital sentencing process an extra statutory requirement. Unless and until a majority of this Court concludes that Ring applies in Florida, and that it requires a jury's majority (or unanimous) conclusion that a particular aggravator applies, or *546 until the Legislature amends the statute (see our discussion at section C below), the court's order imposes a substantive burden on the state not found in the statute and not constitutionally required.
Even if they did not impose an additional substantive burden, specific jury findings on aggravators without guidance about their effect on the imposition of a sentence could unduly influence the trial court's own determination of how to sentence the defendant. Under section 921.141(3), Florida Statutes, the trial court must independently determine the existence of aggravating and mitigating circumstances, and the weight to be given each. See Blackwelder v. State, 851 So.2d 650, 653 (Fla.2003) (reminding judges of their duty to independently weigh aggravating and mitigating circumstances and noting that a "sentencing order should reflect the trial judge's independent judgment about the existence of aggravating and mitigating factors and the weight each should receive"); Bouie v. State, 559 So.2d 1113, 1116 (Fla.1990) (holding that a trial court order must reflect the independent determination of the existence and weight of aggravating and mitigating circumstances). Our current system fosters independence because the trial court alone must make detailed findings about the existence and weight of aggravating circumstances; it has no jury findings on which to rely. Individual jury findings on aggravating factors would contradict this settled practice. Even assuming such a requirement was properly the province of the trial court, jury instructions about specific findings would have to be accompanied by clear directions about their effect, if any, on the trial court's own findings in determining the sentence. Such directions are more appropriately crafted in a rules proceeding than in an individual capital case.
The requirement of a majority vote on each aggravator is also an unnecessary expansion of Ring. The Court in Ring concluded that under Arizona's capital sentencing scheme, aggravating factors operate as the "functional equivalent of an element of a greater offense." 536 U.S. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Therefore, the Court held, the Sixth Amendment required that they be found by the jury. Id. Even if Ring did apply in Floridaan issue we have yet to conclusively decide we read it as requiring only that the jury make the finding of "an element of a greater offense." Id. That finding would be that at least one aggravator exists-not that a specific one does. But given the requirements of section 921.141 and the language of the standard jury instructions, such a finding already is implicit in a jury's recommendation of a sentence of death. Our interpretation of Ring is consistent with the United States Supreme Court's assessment of Florida's capital sentencing statute. In Jones v. United States, 526 U.S. 227, 250-51, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court noted that in its decision in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), in which it concluded that the Sixth Amendment does not require explicit jury findings on aggravating circumstances, "a jury made a sentencing recommendation of death, thus necessarily engaging in the factfinding required for imposition of a higher sentence, that is, the determination that at least one aggravating factor had been proved." In requiring the jury to consider by majority vote each particular aggravator submitted rather than merely specifying whether one or more aggravators exist, the trial court in this case imposed a greater burden than the one the Supreme Court imposed in reviewing Arizona's judge-only capital sentencing scheme in Ring. But cf. State v. Timmons, *547 209 Ariz. 403, 103 P.3d 315, 318 (Ct.App. 2005) (observing that in State v. Ring, 204 Ariz. 534, 65 P.3d 915 (2003), the Arizona Supreme Court construed the United States Supreme Court decision in Ring as requiring a jury finding on each aggravating factor supporting a death sentence).[1]
Allowing a trial court to require jury findings on individual aggravators also creates a potential inconsistency in capital sentencing proceedings. The State would face different burdens for obtaining a sentence of death in different courts, or even in the same court before different judges. Innovation regarding the jury's penalty-phase determinations cannot be accomplished with such an ad hoc approach. One critical concern reflected in the United States Supreme Court's capital sentencing jurisprudence is consistency. See, e.g., Lewis v. Jeffers, 497 U.S. 764, 774, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (stating that the principle that the death penalty cannot be arbitrarily or capriciously imposed requires a State to "channel the sentencer's discretion by `clear and objective standards' that provide `specific and detailed guidance,' and that `make rationally reviewable the process for imposing a sentence of death'") (quoting Godfrey v. Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality opinion)); see also Barclay, 463 U.S. at 960, 103 S.Ct. 3418 (Stevens, J., concurring in the judgment) ("A constant theme of our cases ... has been emphasis on procedural protections that are intended to ensure that the death penalty will be imposed in a consistent, rational manner."). In Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Court upheld the Florida capital sentencing scheme still in use today, rejecting a claim that our appellate review process is "ineffective or arbitrary." Id. at 258, 96 S.Ct. 2960. Were we to permit the special penalty-phase verdict ordered in this case, the disparity in procedures from case to case could result in a determination that the State is administering section 921.141 arbitrarily, contrary to the Eighth Amendment's ban on cruel and unusual punishments.
We cannot predict all the consequences of approving the trial court's order, but we are unwilling to approve ad hoc innovations to a capital sentencing scheme that both the United States Supreme Court and this Court repeatedly have held constitutional. See, e.g., Hildwin, 490 U.S. at 640-41, 109 S.Ct. 2055; Spaziano v. Florida, 468 U.S. 447, 467, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay, 463 U.S. at 958, 103 S.Ct. 3418; Proffitt, 428 U.S. at 259, 96 S.Ct. 2960; Kormondy, 845 So.2d at 54; State v. Dixon, 283 So.2d 1, 11 (Fla.1973). Moreover, any special verdict on aggravators would have to be accompanied by clear instructions on how these changes affect the jury's role in rendering its advisory sentence and the trial court's role in determining whether to impose a sentence of death. To maintain consistency in our capital sentencing procedures, any changes should be made systematically.[2] Therefore, unless and until a material change occurs in section 921.141, the decisional law, the applicable rules of procedure, or the standard instructions and verdict *548 form, a trial court departs from the essential requirements of law in requiring a special verdict form that details the jurors' votes on specific aggravating circumstances.
We therefore answer "yes" to the second certified question. We hold that a trial court departs from the essential requirements of law in a death penalty case by using a penalty phase special verdict form that details the jurors' determination concerning aggravating factors found by the jury.

C. The Need for Legislative Action
Finally, we express our considered view, as the court of last resort charged with implementing Florida's capital sentencing scheme, that in light of developments in other states and at the federal level, the Legislature should revisit the statute to require some unanimity in the jury's recommendations. Florida is now the only state in the country that allows a jury to decide that aggravators exist and to recommend a sentence of death by a mere majority vote. Of the 38 states that retain the death penalty, 35 require, at least, a unanimous jury finding of aggravators. Of these, 24 states require by statute both that the jury unanimously agree on the existence of aggravators and that it unanimously recommend the death penalty.[3] Three states require by statute unanimity only as to the jury's finding of aggravators.[4] Seven more states have judicially imposed a requirement at least that the aggravators be determined unanimously.[5] *549 Of these seven states, five (all except Alabama and Kentucky) require that both the aggravators and the recommendation of death be unanimous. Alabama and Kentucky require only that the aggravators be determined unanimously. Although Missouri law is less clear, it appears that a jury at least must unanimously find the aggravators. See Parker v. Bowersox, 188 F.3d 923, 929 (8th Cir.1999); State v. Thompson, 134 S.W.3d 32, 32-33 (Mo. 2004); Mo. R.Crim. P. 29.01(a).
That leaves Utah and Virginia. In those states, the jury need not find each aggravator unanimously, but the jury must unanimously recommend the death penalty. See Utah Code Ann. § 76-3-207(5)(b) (2003); State v. Carter, 888 P.2d 629, 655 (Utah 1995) (concluding there is no requirement that the jury find separately and unanimously each aggravator relied on in imposing the death penalty); Va.Code Ann. § 19.2-264.4D (2004); Clark v. Commonwealth, 220 Va. 201, 257 S.E.2d 784, 791-92 (1979) (concluding it is not necessary for jurors to specify that they found an aggravator or aggravators unanimously). Finally, the federal government, when imposing the death penalty, also requires a unanimous jury. See 18 U.S.C. § 3593(d) (2000).
Many courts and scholars have recognized the value of unanimous verdicts. For example, the Connecticut Supreme Court has stated:
[W]e perceive a special need for jury unanimity in capital sentencing. Under ordinary circumstances, the requirement of unanimity induces a jury to deliberate thoroughly and helps to assure the reliability of the ultimate verdict. The "heightened reliability demanded by the Eighth Amendment in the determination whether the death penalty is appropriate"; Sumner v. Shuman, 483 U.S. 66, 107 S.Ct. 2716, 2720, 97 L.Ed.2d 56 (1987); convinces us that jury unanimity is an especially important safeguard at a capital sentencing hearing. In its death penalty decisions since the mid-1970s, the United States Supreme Court has emphasized the importance of ensuring reliable and informed judgments. These cases stand for the general proposition that the "reliability" of death sentences depends on adhering to guided procedures that promote a reasoned judgment by the trier of fact. The requirement of a unanimous verdict can only assist the capital sentencing jury in reaching such a reasoned decision.
State v. Daniels, 207 Conn. 374, 542 A.2d 306, 315 (1988) (citations omitted); see also Andres v. United States, 333 U.S. 740, 749, 68 S.Ct. 880, 92 L.Ed. 1055 (1948) (upholding lower court's interpretation of a federal statute to require jury unanimity as to both guilt and punishment and reasoning that such a requirement "is more consonant with the general humanitarian purpose of the statute and the history of the Anglo-American jury system"); Elizabeth F. Loftus & Edith Greene, Twelve Angry People: The Collective Mind of the Jury, 84 Colum. L.Rev. 1425, 1428 (1984) (reviewing Reid Hastie et al., Inside the Jury (1983)) (review of an empirical study indicating that "behavior in juries asked to reach a unanimous verdict is more thorough and grave than in majority-rule juries, and that the former were more likely than the latter jurors to agree on the issues underlying their verdict").
*550 The bottom line is that Florida is now the only state in the country that allows the death penalty to be imposed even though the penalty-phase jury may determine by a mere majority vote both whether aggravators exist and whether to recommend the death penalty. Assuming that our system continues to withstand constitutional scrutiny, we ask the Legislature to revisit it to decide whether it wants Florida to remain the outlier state.

III. CONCLUSION
To reiterate our holdings in this case, we conclude that a trial court does not depart from the essential requirements of law in requiring the State to specify the aggravating circumstances it intends to prove in the penalty phase of a capital case, but does depart from the essential requirements of law in using a penalty-phase special verdict form detailing jurors' determinations on aggravating circumstances. The certified questions ask whether each determination constitutes a departure from the essential requirements of law. We answer the first certified question in the negative and the second in the affirmative. The Second District reached opposite conclusions, granting the State's petition for certiorari as to the advance notice of aggravators but denying certiorari relief regarding the special verdict. We therefore quash the Second District decision and remand with directions to deny certiorari on the portion of the trial court order requiring notice of aggravators but grant certiorari and quash the portion of the order requiring the special verdict form.
It is so ordered.
WELLS, LEWIS, QUINCE, and BELL, JJ., concur.
WELLS, J., specially concurs with an opinion, in which CANTERO and BELL, JJ., concur.
PARIENTE, C.J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., specially concurring.
I write specially to state my view that there is a need for legislative reassessment and revision of Florida's capital punishment statute in light of developments in Florida's sentencing laws and federal constitutional law.
The development in Florida's sentencing law to which I refer is the 1994 revision to section 775.082(1), Florida Statutes, which now provides that the alternative sentence to the death sentence of section 921.141 is life imprisonment without eligibility of parole. Prior to this revision, the alternative sentence was life imprisonment with eligibility for parole after twenty-five years. Additionally, section 944.275, Florida Statutes (2004), (gain time) was amended to mandate no gain time for life imprisonment sentences. Life has been mandated to mean life. Our statistics reflect that we are having fewer defendants sentenced to death. I conclude that confidence in this sentencing revision has caused state attorneys and juries to have more confidence in life sentences, and this is partially the reason for the reduction in death sentences.
Also in 1994, Congress adopted the Federal Death Penalty Act, 18 U.S.C. §§ 3591-97 (2000). In section 3593, Congress established capital penalty phase procedures. Congress had the advantage of drawing upon the experience of the states which had adopted death penalty statutes in the 1970s. These procedures had been vetted through very substantial litigation in the state and federal courts with many decisions by the United States Supreme Court. The federal act was sustained against several constitutional attacks *551 in Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).
Two important procedures under the federal act are relevant to the present discussion. The federal act requires notice to the defendant setting forth aggravating factors that the government proposes to prove as justification for a sentence of death. The federal act also requires that a decision for a death sentence be made by a unanimous jury. 18 U.S.C. §§ 3593-94 (2000).
In 1999 through 2000, there were further developments in sentencing laws in respect to construction of federal constitutional rights to jury determinations stemming from the Sixth Amendment to the United States Constitution. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Jones. These cases were followed by Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which made the Apprendi analysis applicable to Arizona's capital sentencing statute. It is Ring that was the cause of the trial judge's concern in this case.
In 2004, the Supreme Court issued Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and very recently, in 2005, the Supreme Court has decided Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). These cases have additional analysis of the Sixth Amendment right to a jury determination in criminal sentencing.
In Bottoson v. Moore, 833 So.2d 693 (Fla.2002) (Wells, J., concurring), and Bottoson v. Moore, 824 So.2d 115, 122 (Fla. 2002) (Wells, J., dissenting), I have stated my opinion that this Court is bound by the present Florida capital sentencing statute, which was upheld against various constitutional attacks in the United States Supreme Court prior to Ring. The Supreme Court has not receded from any of those cases. That continues to be my opinion. However, I do believe these Supreme Court decisions have brought about a need for the Legislature to undertake an assessment and revision of Florida's statute.
In Ring, the United States Supreme Court noted that of the thirty-eight states that have the death penalty, there were twenty-nine states in which the sentencing jury generally had the sentencing responsibility; there were five states in which the judge had the sole sentencing responsibility; and there were four "hybrid" states, including Florida, in which the jury rendered an advisory sentence but the judge ultimately decided on the sentence. Ring, 536 U.S. at 608 n. 6, 122 S.Ct. 2428. Approximately three years later, no states have "judge-only" capital sentencing. In thirty-three states, as well as the federal system, the jury is now generally responsible for imposing a death sentence.[6] Five states, including Florida, have hybrid capital sentencing systems.[7] In the other hybrid *552 sentencing states, there has been legislative revision since the Ring decision.[8] Where a special jury finding has not previously been required, it was added in response to Ring.[9] I believe the excellent research set out in Justice Cantero's majority opinion, with which I agree, further demonstrates the real need to address this issue, as Justice Cantero writes.
I believe that the federal statute's procedures could serve as a model for the Florida revision since those procedures do not appear to have Apprendi-Ring problems. By the Florida Legislature enacting this revision, Florida's statute would clearly be in compliance with the United States Constitution and be consistent with the changes in sentencing which the Legislature has enacted since Florida's death penalty was reestablished in the 1970s.
CANTERO and BELL, JJ., concur.
PARIENTE, C.J., concurring in part and dissenting in part.
I concur in Parts II.A. and II.C. of the majority opinion but dissent as to Part II.B. Initially, and independent of the certified *553 questions, I concur wholeheartedly in the majority's call for legislative reevaluation of Florida's capital sentencing scheme to determine whether jurors should be required to unanimously decide whether death should be imposed as well as make unanimous findings on the existence of aggravating factors. I also agree with Justice Wells that the Legislature should look to the federal death penalty as a model in requiring both advance notice of aggravating factors and unanimity in the jury's decision for death.
Turning to the certified questions, I agree that the advance notice of aggravating factors required by the trial court does not constitute a departure from the essential requirements of law. However, I would also conclude that requiring the jury to specify its findings and vote on each aggravating factor submitted during the penalty phase is permissible, and certainly not a departure from the essential requirements of law resulting in a miscarriage of justice. While findings on individual aggravators are not mandated under our rules of procedure or substantive law, neither do the rules and statutes prohibit the use of a special verdict. Rather than cause a miscarriage of justice, a special verdict on aggravating circumstances promotes justice by enhancing juror fact-finding, conveying useful information to the sentencing court, and facilitating appellate review. It is also in accord with the report of the Criminal Court Steering Committee to our Court.[10]
In our first decision addressing the effect of Ring on Florida's capital sentencing scheme, I suggested that we "immediately" require trial judges to "utilize special verdicts that require the jury to indicate what aggravators the jury has found and the jury vote as to each aggravator." Bottoson v. Moore, 833 So.2d 693, 723 (Fla. 2002) (Pariente, J., concurring in result only). I explained the benefits of obtaining this type of information from a penalty-phase jury:
By requiring a special verdict on aggravating circumstances, this Court will not only assist trial judges in administering section 921.141, but also enhance the quality of our own constitutionally mandated review of death sentences in a manner that anticipates the likely effect of Ring and its progeny. First, the special verdict would serve to facilitate our determination of harmless error during appellate review. Second, the additional procedure would assist in the jury override situation because this Court would know whether the jury's life recommendation was based on a finding of no aggravators or on a determination that the mitigators outweighed the aggravators. Finally, a special verdict form would help to ensure that this Court does not run afoul of the Eighth Amendment by affirming a death sentence based on an invalid aggravator  i.e. in this context, an aggravator not properly found by the jury. See Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) (holding that an Eighth Amendment violation occurred when, under Florida's sentencing scheme, a trial judge weighed an invalid aggravating factor).
By acting prospectively, we can act to ensure that future verdicts comply with our state constitutional requirements... as well as the Sixth Amendment dictates of Ring. These additional findings through special verdicts will also facilitate our appellate review and enhance *554 the integrity of the death penalty verdicts.
Id. at 724-25 (footnotes omitted).
In Huggins v. State, 889 So.2d 743 (Fla. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 2546, 162 L.Ed.2d 280 (2005), we reviewed a case in which the trial court, in a penalty phase conducted shortly after Ring, submitted a special verdict form requiring the jurors to determine the existence of each aggravating circumstance submitted and record the vote on each. See id. at 776-77 (Pariente, C.J., dissenting). The jurors found that each aggravator submitted to them was established beyond a reasonable doubt. The jury's vote on the existence of the aggravators was unanimous, which in my view satisfies the requirements of Ring. See id. at 777; see also Butler v. State, 842 So.2d 817, 835-40 (Fla.2003) (Pariente, J., concurring in part and dissenting in part) (dissenting from affirmance of death sentence in part because eleven-to-one death recommendation without findings on aggravators did not reflect unanimous finding of death-qualifying aggravating circumstance). Similarly, in Floyd v. State, 913 So.2d 564 (Fla. 2005), and Simmons v. State, No. SC04-19 (Fla. oral argument held Apr. 5, 2005), now under review in this Court, the trial court submitted a special verdict form listing the proposed aggravating factors, each of which the jury found to exist by a unanimous vote. The transcript in Simmons demonstrates that directions on completing the special verdict can be easily incorporated into the final penalty-phase jury instructions.[11] Both the special verdict and the accompanying jury instructions provide further support for my belief that jury findings on aggravators serve to enhance the fact-finding process, assist the trial court, and facilitate appellate review.
The special verdict ordered by the trial court in this case is in accord both with my suggestions in Bottoson and with the special verdict used by the trial courts in Huggins and Simmons. The trial court's reasons for using the special verdict were the same as those I pointed to in Bottoson: to comply with Ring, to provide guidance to the trial court in imposing sentence, and to facilitate appellate review. The greater clarity that jury findings on aggravating *555 circumstances will bring can only benefit both the trial court in fulfilling its statutory duties and this Court in reviewing sentences of death.
The majority expresses concern that the special verdict may confuse the jury as to its role. I am confident that the trial court in this case would instruct the jury that its findings on aggravators are distinct from its advisory sentence. To alleviate any concern that a juror may recommend death even if he or she has not found an aggravator to exist, the court could instruct the jury that a juror may recommend death only after finding the existence of one or more aggravating circumstances. In the vast majority of cases, as in Huggins, Floyd, and Simmons, jurors will agree on the existence of one or more aggravators, satisfying Ring.[12]
The majority also expresses concern that jury findings in one case but not in another may lead the United States Supreme Court to conclude that our death penalty is being arbitrarily and capriciously applied. I agree that it would be better if this Court mandates the use of special verdicts in all death penalty cases so that the usage will be uniform. But I disagree that allowing special verdicts until we have promulgated a rule could result in an unconstitutional application of the death penalty. So long as juries are correctly instructed as to their role in making a death recommendation, there can be no constitutional defect in obtaining additional information from the jury regarding its findings on aggravating circumstances. In fact, findings on aggravators should lead to affirmance of death sentences where the absence of findings would necessitate reversal. In Bottoson, I pointed to an example in which we could not tell whether, in recommending life imprisonment, the jury concluded that no aggravating circumstances existed, and another in which it was impossible to determine whether the jury relied on an aggravator improperly found by the trial court in imposing death. See 833 So.2d at 724 nn. 64-65 (Pariente, J., concurring in result only). Both questions would be answered by the special verdict ordered in this case. Thus, the lack of findings on aggravators can only inure to defendants' benefit in the event of a death override or an aggravator struck on appeal. The fact that findings are made in some cases but not others, thereby going beyond what is constitutionally required and providing a stronger foundation for a harmless error determination, does not render the capital sentencing scheme arbitrary or capricious.
I acknowledge that requiring the jury to make a finding and record the vote on each individual aggravator goes beyond Ring's requirement that the jury find at least one aggravator that renders the defendant eligible for death. Also, although jury findings on aggravators are not expressly required by our statute, these findings are not statutorily prohibited. The special verdict enhances juror fact-finding, informs trial court sentencing, and facilitates appellate review. For these reasons, and because special verdicts are not specifically prohibited under section 921.141 or our rules of procedure, the trial court's requirement of a special verdict in this case does not, in my view, constitute a *556 departure from the essential requirements of law resulting in a miscarriage of justice.
ANSTEAD, J., concurs.
NOTES
[1] We note that after Ring, Arizona amended its capital sentencing statute to require jury findings on individual aggravators. See Ariz. Rev.Stat. § 13-703.01(E) (Supp.2003), as amended by 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 3.
[2] We note that, at the request of the Court, the Committee on Standard Jury Instructions in Criminal Cases and the Criminal Court Steering Committee have filed reports recommending amendments to the standard penalty-phase instructions and verdict form. We will give these recommendations careful consideration.
[3] The following states require a unanimous finding on aggravators, as well as a unanimous recommendation of death, pursuant to their respective sentencing statutes: Arizona (Ariz.Rev.Stat. § 13-703.01(E), (H) (Supp. 2003)); Arkansas (Ark.Code Ann. § 5-4-603(a) (Michie 1997)); California (Cal.Penal Code § 190.4(a)-(b) (West 1999)); Colorado (Colo.Rev.Stat. § 18-1.3-1201(2)(a) (2004)); Georgia (Ga.Code.Ann. § 17-10-31.1(c) (2004)); Idaho (Idaho Code § 19-2515(3)(b) (Michie Supp.2003)); Illinois (720 Ill. Comp. Stat. Ann., § 5/9-1(g) (West Supp.2005)); Kansas (Kan.Stat.Ann. § 21-4624(e) (Supp. 2004)); Louisiana (La.Code Crim. Proc. Ann. art. 905.7 (West 1997)); State v. Sonnier, 402 So.2d 650, 657 (La.1981)); Maryland (Md. Code Ann., Crim. Law, § 2-303(i) (Supp. 2004)); Baker v. State, 367 Md. 648, 790 A.2d 629, 636 (2002)); Metheny v. State, 359 Md. 576, 755 A.2d 1088, 1097 (2000)); Mississippi (Miss.Code Ann. § 99-19-103 (1999)); New Hampshire (N.H.Rev.Stat.Ann. § 630:5(IV) (1996)); New Mexico (N.M. Stat. Ann. § 31-20A-3 (Michie 2000)); New York (N.Y.Crim. Proc. Law § 400.27(7)(b), (10) (Supp.2003)); Oklahoma (Okla. Stat. tit. 21, § 701.11 (2002)); Ohio (Ohio Rev.Code Ann. § 2929.03(B), (D) (Supp.2005); (Ohio R.Crim. P. 31)); Oregon (Or.Rev.Stat. § 163.150(1)(b)-(e) (2003)); Pennsylvania (42 Pa. Cons.Stat. § 9711(c)(1)(iv) (Supp.2005)); South Carolina (S.C.Code Ann. § 16-3-20(C) (Supp.2001)); South Dakota (S.D. Codified Laws §§ 23A-26-1, 23A-27A-4) (1998)); Tennessee (Tenn.Code Ann. § 39-13-204(g) (2003)); Texas (Tex.Code Crim. Proc. Ann. art. 37.071(2) (Supp.2004)); Washington (2005 Wash. Laws ch. 68, § 4; Wash. Rev. Code §§ 10.95.060, 10.95.080 (2002)); and Wyoming (Wyo.Stat.Ann. § 6-2-102(d)(ii) (2005)).
[4] These are Montana (Mont.Code.Ann. § 46-1-401(1)(b), (3); XX-XX-XXX (2003)); Nebraska (Neb.Rev.Stat. § 29-2520(4)(f) (2003)); Delaware (Del.Code Ann. tit. 11, § 4209(d)(1) (Supp.2004)).
[5] Of these seven states, two judicially require both a unanimous jury finding of aggravators and a unanimous recommendation of death. These are Connecticut (State v. Reynolds, 264 Conn. 1, 836 A.2d 224, 313 (2003) (quoting State v. Ross, 230 Conn. 183, 646 A.2d 1318, 1352 (1994))) and Nevada (Geary v. State, 114 Nev. 100, 952 P.2d 431, 433 (1998)). Five judicially require only a unanimous jury finding of aggravators. These are Alabama (McNabb v. State, 887 So.2d 998 (Ala.2004); McGriff v. State, 908 So.2d 1024, 1037 (Ala. 2004)); Indiana (State v. Barker, 809 N.E.2d 312, 316 (Ind.2004)); Kentucky (Soto v. Commonwealth, 139 S.W.3d 827, 871 (Ky.2004), cert. denied, 544 U.S. 931, 125 S.Ct. 1670, 161 L.Ed.2d 495 (2005)); New Jersey (State v. Nelson, 173 N.J.417, 803 A.2d 1, 15-16 (2002)); State v. Bey, 112 N.J. 123, 548 A.2d 887, 905 (1988)); North Carolina (State v. McKoy, 327 N.C.31, 394 S.E.2d 426, 428 (1990)). However, in two of these states, a unanimous recommendation of death is required by statute. See N.J. Stat. Ann. § 2C:11-3 (West Supp.2003); N.C. Gen.Stat. § 15A-2000 (2001).
[6] Since Ring, three states in addition to Arizona have revised their capital sentencing laws to become jury sentencing states: Colorado (Colo.Rev.Stat. § 18-1.3-1201 (2004)); Idaho (Idaho Code § 19-2515 (Supp.2003)); and Indiana (Ind.Code Ann. § 35-50-2-9 (2004)). Colorado and Idaho were formerly judge sentencing states; Indiana was formerly a hybrid capital sentencing state. See Ring, 536 U.S. at 608 n. 6, 122 S.Ct. 2428. In the federal system, the jury determines whether to sentence a defendant to death. See 18 U.S.C. § 3594 (2000) ("Upon a recommendation... that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly.").
[7] See Ala.Code §§ 13A-5-45, 13A-5-46, 13A-5-47 (1994); Del.Code Ann., tit. 11, § 4209 (Supp.2004); § 921.141, Fla. Stat. (2004); Mont.Code Ann. §§ 46-18-301, 46-1-401 (2003); Neb.Rev.Stat. §§ 29-2520, 29-2521 (2003).

Alabama's statute provides: "If the jury determines that no aggravating circumstances as defined in section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole." Ala.Code § 13A-5-46(e)(1) (2004). However, the Alabama Supreme Court has recently stated: "Ring requires that this subsection be applied in these terms: If the jury determines that no aggravating circumstance as defined in § 13A-5-49 exists, the jury must return a verdict, binding on the trial court, assessing the penalty of life imprisonment without parole." McGriff v. State, 908 So.2d 1024, 1038 (Ala.2004). In the remaining three hybrid states, not including Florida, the respective statutes clearly provide that an aggravating circumstance must be found by the jury before the death penalty can be imposed. See Del.Code Ann., tit. 11, § 4209(c)(3)(b)(1) (Supp.2004) ("The jury shall report to the Court its finding on the question of the existence of statutory aggravating circumstances."); Mont.Code Ann. § 46-1-401(1)-(3) (2003) (prohibiting death sentence unless jury makes finding beyond reasonable doubt on verdict form that aggravating circumstances exist); Neb.Rev.Stat. § 29-2520(4)(f) (2003) ("The jury at the aggravation hearing shall deliberate and return a verdict as to the existence or nonexistence of each alleged aggravating circumstance.").
[8] Nebraska changed from a judge-only sentencing state shortly after Ring. 2002 Neb. Laws 3d Special Sess., LB1; see also Marc R. Shapiro, Re-Evaluating the Role of the Jury in Capital Cases After Ring v. Arizona, 59 N.Y.U. Ann. Sur. Am. L. 633, 651 (2004). Montana changed its capital sentencing scheme in 2001, prior to the Ring decision. 2001 Mont. Laws 524; see also Shapiro, supra, at 647.
[9] Arizona reacted to Ring by amending its laws shortly after the decision, which now require complete jury participation in making findings regarding aggravators and determining the sentence. 2002 Ariz. Sess. Laws 5th S.S., Ch. 1. In 2002, Delaware slightly changed the jury's role from an advisory one to a requirement that the jury determine the existence of at least one aggravating circumstance. 73 Del. Laws, ch. 423 (2002); see also Shapiro, supra, at 651. In 2002, Indiana moved from a hybrid structure to give complete jury control in imposing the death penalty. 2002 Indiana Acts, P.L. 117-2002, sec. 2. In 2002, Nebraska amended its statute to provide a requirement that the jury find at least one aggravating circumstance at the penalty phase, shifting away from its former requirement of a three-judge sentencing panel system. 2002 Neb. Laws 3d Special Sess., LB 1; see also Shapiro, supra, at 651. Colorado amended its law in 2002, and Idaho in 2003, to provide for jury instead of judge imposition of the death penalty. 2002 Colo. Sess. Laws, 3d Ex.Sess. ch. 1; 2003 Idaho Session Laws, ch. 19. In 2003, Nevada eliminated a panel of judges in favor of a jury for the purpose of making the sentencing decision in cases where the defendant pled guilty. 2003 Nev. Stat. ch. 366. In Alabama, although the legislature did not act immediately, the Alabama Supreme Court interpreted the statute so that it would comply with Ring, requiring that the jury find at least one aggravating circumstance before the court could impose the death penalty. McGriff.
[10] See Report of the Criminal Court Steering Committee (Oct. 5, 2005) (on file with the Supreme Court of Florida).
[11] The trial court's instructions to the jury in Simmons were as follows:

We have a verdict form for your consideration, and I want to go over that with you. I think the lawyers, one of the lawyers, or both, mentioned the way we have it set up in two sections. The first section relates to aggravating factors. The instruction is "Check all appropriate," in other words, any of these that you find exist, check those boxes: No. 1, A majority of the jury, by a vote of blank to blank, find the following aggravating circumstance has been established beyond a reasonable doubt: The defendant has been previously convicted of a felony involving the threat of violence to some person; No. 2, a majority of the jury, by a vote of blank to blank, find the following aggravating circumstance has been established beyond a reasonable doubt: The crime for which the defendant is to be sentenced was committed while he was engaged in the commission of, or an attempt to commit sexual battery, or kidnapping, or both; No. 3, a majority of the jury, by a vote of blank to blank, find the following aggravating circumstance has been established beyond a reasonable doubt: The crime for which the defendant is to be sentenced was especially heinous, atrocious or cruel.
A separate section, advisory sentence, we the jury, find as follows as to this case, as to the defendant in this case: (check only one of these boxes), No. 1, a majority of the jury, by a vote of blank to blank, advise and recommend to the court that it impose the death sentence upon Eric Simmons; No. 2, the jury advises and recommends to the court that it impose a sentence of life imprisonment upon Eric Simmons without possibility of parole.
Simmons, No. SC04-19, Record at 4656-58.
[12] For reasons I have previously explained, I would instruct jurors that in order to recommend a sentence of death, they must unanimously conclude that at least one aggravating circumstance exists. See Davis v. State, 859 So.2d 465, 485-86 (Fla.2003) (Pariente, J., dissenting); Butler, 842 So.2d at 835-40 (Pariente, J., concurring in part and dissenting in part); Bottoson, 833 So.2d at 723 n. 63 (Pariente, J., concurring in result only).