PARIENTE, J.,
specially concurring.
I agree with the majority’s affirmance of the convictions and sentences of death. I write to address the difficulties created by our failure to allow or mandate special interrogatories in death penalty cases as more fully explained in my separate opinions in Lebron v. State, 982 So.2d 649, 670 (Fla.2008) (Pariente, J., concurring); Franklin v. State, 965 So.2d 79, 103 (Fla.2007) (Pariente, J., specially concurring); and Coday v. State, 946 So.2d 988, 1024 (Fla.2006) (Pariente, J., concurring in part and dissenting in part). As I stated in Coday and reiterated in Lebrón, the use of special verdict forms would enable this Court “to tell when a jury has unanimously found a death-qualifying aggravating circumstance, which would both facilitate our proportionality review and satisfy the constitutional guarantee of trial by jury even when the recommendation of death is less than unanimous.” Lebron, 982 So.2d at 671 (Pariente, J., concurring) (quoting Co-day, 946 So.2d at 1024 (Pariente, J., concurring in part and dissenting in part)). In both Coday and Lebrón, the trial judges had in fact utilized a special verdict form. The majority opinions in Coday and Le- *611 bron concluded that, although the use of the special verdict form was error based on our opinion in State v. Steele, 921 So.2d 538 (Fla.2005), it was harmless.
In Lebrón, it was Chief Judge Belvin Perry, one of the most experienced trial judges in the State, who had utilized a special verdict form because he did not like “fishing in the dark.” Lebrón, 982 So.2d at 671. The frustration with not being able to use special verdict forms and the constitutional concerns with the inability to receive explicit jury findings were also expressed by the trial judge in this case, Judge O.H. Eaton, Jr., another one of our most experienced trial judges in death penalty cases, and the judge who teaches the State’s judges the death penalty course mandated by the Rules of Judicial Administration. See Fla. R. Jucl. Admin. 2.215(b)(10). As Judge Eaton elaborated in his sentencing order in this case, in explaining why the jury recommendation of death is “essentially meaningless” to him without specific findings:
Defense counsel raised several constitutional arguments in his pretrial motions and in his sentencing memorandum. The court chooses to discuss some of them because they are issues that are of concern to the Court in deciding the sentence to be imposed in this case.
Florida’s death penalty scheme places certain duties upon the trial judge in determining whether to impose the death penalty or a sentence of life imprisonment without possibility of parole.
One of the duties placed upon the trial judge is to give the recommendation of the jury “great weight,” unless circumstances not applicable here allow lesser weight. See Muhammad v. State, 782 So.2d 343 (Fla.2001). However, a definition of this subjective term, “great weight,” is not contained in the statute or the case law. The most that can be said about the guidance the Supreme Court of Florida has given to the trial courts in applying this term is that when a jury returns a life recommendation, “great weight” almost always precludes the imposition of a death sentence, Smith v. State, 866 So.2d 51 (Fla.2004), while “great weight” does not preclude the trial judge from disagreeing with a death recommendation and imposing a life sentence. Tompkins v. State, 872 So.2d 230 (Fla.2003). How “great” is the weight when the members of the jury cannot agree unanimously on the recommended sentence? Should a seven to five vote for death be given the same weight as a unanimous vote? These are issues the trial courts deal with in capital cases.
The role of the jury during the penalty phase under the Florida death penalty scheme has always been confusing. The jury makes no findings of fact as to the existence of aggravating or mitigating circumstances, nor what weight should be given to them, when making its sentencing recommendation. The jury is not required to unanimously find a particular aggravating circumstance exists beyond a reasonable doubt. It makes the recommendation by majority vote, and it is possible that none of the jurors agreed that a particular aggravating circumstance submitted to them was proven beyond a reasonable doubt. The jury recommendation does not contain any interrogatories setting forth which aggravating factors were found, and by what vote; how the jury weighed the various aggravating and mitigating circumstances; and, of course, no one will ever know if one, more than one, any, or all of the jurors agreed on any of the aggravating and mitigating circumstances. It is possible, in a case such as this one, where several aggravating circumstances are submitted, that none of *612 them received a majority vote. This places the Court in the position of not knowing which aggravating and mitigating circumstances the jury considered to be proven and provides little, if any, guidance in determining a sentence. In fact, the trial judge is prohibited by law from requiring the jury to make findings through a verdict containing special interrogatories. State v. Steele, 921 So.2d 538 (Fla.2006). Accordingly, absent a recommendation for life, the jury recommendation is essentially meaningless to the trial judge, especially if the parties present additional aggravating and mitigating circumstances at the Spencer hearing.
After the jury renders its recommendation, the trial judge is required by law to independently find the existence of aggravating and mitigating circumstances. The Statute provides, “[n]ot-withstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is imposed.” Sec. 921.141, Fla. Stat. (2005).
There is no question about the trial court’s duty to make findings independent from those made by the jury. The Supreme Court of Florida has made that clear on a number of occasions. Recently, the Court stated, “[hjowever, we remind judges of their duty to independently weigh aggravating and mitigating circumstances. A sentencing order should reflect the trial judge’s independent judgment about the existence of aggravating and mitigating factors and the weight each should receive.” Black-welder v. State, 851 So.2d 650, 653 (Fla.2003).
Since the jury makes no findings whatsoever, and only delivers a sentence recommendation, the question arises as to what “great weight” truly means. The Court concludes that when a jury returns a recommendation for the death penalty, “great weight” simply means the trial judge is not precluded from considering that option. As has been observed by the United States Supreme Court, “[a] Florida trial court no more has the assistance of a jury’s findings of fact with respect to sentencing issues than does a trial judge in Arizona.” Walton v. Arizona, 497 U.S. 639, 648[, 110 S.Ct. 3047, 111 L.Ed.2d 511] (1990).
Florida trial judges are bound to follow the precedent laid down by the Supreme Court of Florida. That Court has taken the position that the Florida capital punishment scheme is constitutionally valid unless and until the United States Supreme Court declares otherwise. Marshall v. Crosby, 911 So.2d 1129 (Fla.2005). Following that precedent, knowing the obvious due process problems with Florida’s death penalty scheme, certainly tests the resolve of trial judges, who must decide who will live and who will die. See Ring v. Ariz., 536 U.S. 584[, 122 S.Ct. 2428, 153 L.Ed.2d 556] (2002).
That being said, this Court will use the tools available under the present law in deciding the penalty to be imposed in this case.
My colleagues in Steele and in cases following Steele have concluded that this Court cannot mandate the use of special interrogatories without a change in the death penalty legislation. The Court, through Justice Cantero, urged changes to the death penalty statute to allow for unanimous jury findings of aggravators and the use of special verdict forms, but *613 there have been no legislative changes. See Steele, 921 So.2d at 545-46.
Judge Eaton has eloquently explained why special verdict forms would assist trial judges in assessing jury recommendations of death. This case is also another example of how special verdict forms would assist in this Court’s review of death sentences, and in this case our harmless error analysis on the issues of the effect of the trial court submitting to the jury an aggravator that the trial court ultimately did not find (CCP) and the trial court’s finding of an additional aggravator that it did not submit to the jury (avoid arrest). See Lebrón, 982 So.2d at 672 (Pariente, J., concurring) (“[Special verdict forms] would not only clearly ‘assist the trial court in determining whether to impose the death penalty,’ but also ‘facilitate review by the appellate court, especially in a harmless error analysis.’ ”) (quoting Franklin, 965 So.2d at 103 (Pariente, J., specially concurring)).
I continue to believe that this Court has the authority to require special interrogatories and that in the very least this Court should adopt penalty-phase instructions that will “clearly explain that the jurors are the finders of fact as to aggravating circumstances.” Franklin, 965 So.2d at 103 (Pariente, J., specially concurring).
LABARGA, J., concurs.