PARIENTE, J.,
specially concurring.
I concur in the majority’s adoption of the proposed amendments to the penalty phase jury instructions. My hope is that these amended instructions will assist in minimizing the jury’s confusion as to its roles and responsibilities when deciding whether to recommend the death penalty, as identified in the American Bar Association’s Florida Death Penalty Assessment Report.
I write separately, however, to express my disagreement in two areas that in my view would also assist the jury, the judge, and this Court with their roles and responsibilities in capital cases: special verdict forms in the guilt phase and special verdict forms in the penalty phase. The Criminal Court Steering Committee recommended the mandated use of guilt phase special verdict forms and withdrew its recommendation for the mandated use of penalty phase special verdict forms after our opinion in State v. Steele, 921 So.2d 538 (Fla.2005).
The first area of disagreement is the majority’s decision to decline to adopt the Steering Committee’s recommendation mandating the use of a new capital case verdict form in the guilt phase. That form would have required the jury to state how *24 many of the jurors found the defendant guilty of first-degree murder based on premeditation and how many jurors found that the murder was committed in the course of a felony, with that felony clearly identified. Although the majority opinion does not mandate the use of this form, nothing in our opinion forecloses trial courts from using special verdict forms for first-degree murder to delineate felony murder and premeditated murder as trial courts have done in the past.
The use of special verdict forms to specify felony murder and premeditated murder has numerous advantages as identified by the Steering Committee and those in favor of the forms. I would also defer to the expertise of our Steering Committee members, including the trial judges who have been utilizing the special verdict forms in first-degree murder cases and advocate their mandated use.
The Committee’s proposal should be adopted because the new verdict form would assist both the trial court in making decisions as to what penalty to impose and this Court in reviewing the sentence in the following ways. First, a special verdict form indicating that a defendant was found guilty of first-degree murder based on a premeditated murder theory would obviate the need for the trial court to perform the requisite felony murder analysis under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). As the United States Supreme Court noted in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002):
Because Ring was convicted of felony murder, not premeditated murder, the judge recognized that Ring was eligible for the death penalty only if he was [the victim’s] actual killer or if he was “a major participant in the armed robbery that led to the killing and exhibited a reckless disregard or indifference for human life.”
Id. at 594, 122 S.Ct. 2428 (citing Enmund; Tison). Second, if the State sought to establish either the cold, calculated, and premeditated or felony murder aggrava-tors in the penalty phase, it would be helpful for the trial court to know how the jury viewed the evidence when discussing these aggravating circumstances in the sentencing order. Third, the use of a special verdict form in the guilt phase would guide the trial court in determining the applicable instructions in the penalty phase. Finally, the special verdict form would aid this Court in our review of evi-dentiary issues, as well as the sufficiency of the evidence as to either premeditated or felony murder.
I also believe that this Court has missed an opportunity to further enhance the process of imposition of the death penalty by requiring the use of special verdict forms in the penalty phase so that the jury could have had the opportunity to record its findings on aggravators and mitigators— the essential ingredients in the ultimate decision of whether to impose the death penalty. As the Committee explained in its initial report, “the trial judge [presently] does not know how the jury considered the various aggravating and mitigating circumstances,” and it would be “most helpful to the trial judge [in preparing the sentencing order] to know how the jury viewed the evidence presented in the penalty phase, ” for this would “provide valuable assistance in deciding the weight to be given to each circumstance.” (Emphasis added). In withdrawing this proposal, the Committee apparently concluded that the Court’s decision in Steele precluded the use of such forms in the penalty phase.
I have stated many times in the past the importance of having the jury’s vote re *25 corded on any matters that may form the basis for an aggravating factor that allows the trial court to impose a sentence of death. My most recent expression of the need for special interrogatories, an opinion in which Justice Labarga joined, explains the issue:
I write to address the difficulties created by our failure to allow or mandate special interrogatories in death penalty cases as more fully explained in my separate opinions in Lebron v. State, 982 So.2d 649, 670 (Fla.2008) (Pariente, J., concurring); Franklin v. State, 965 So.2d 79, 103 (Fla.2007) (Pariente, J., specially concurring); and Coday v. State, 946 So.2d 988, 1024 (Fla.2006) (Pariente, J., concurring in part and dissenting in part). As I stated in Coday and reiterated in Lebrón, the use of special verdict forms would enable this Court “to tell when a jury has unanimously found a death-qualifying aggravating circumstance, which would both facilitate our proportionality review and satisfy the constitutional guarantee of trial by jury even when the recommendation of death is less than unanimous.” Lebron, 982 So.2d at 671 (Pariente, J., concurring) (quoting Coday, 946 So.2d at 1024 (Pariente, J., concurring in part and dissenting in part)). In both Coday and Lebrón, the trial judges had in fact utilized a special verdict form. The majority opinions in Coday and Lebron concluded that, although the use of the special verdict form was error based on our opinion in State v. Steele, 921 So.2d 538 (Fla.2005), it was harmless.
In Lebron, it was Chief Judge Belvin Perry, one of the most experienced trial judges in the State, who had utilized a special verdict form because he did not like “fishing in the dark.” Lebron, 982 So.2d at 671. The frustration with not being able to use special verdict forms and the constitutional concerns with the inability to receive explicit jury findings were also expressed by the trial judge in this case, Judge O.H. Eaton, Jr., another one of our most experienced trial judges in death penalty cases, and the judge who teaches the States judges the death penalty course mandated by the Rules of Judicial Administration. See Fla. R. Jud. Admin. 2.215(b)(10). As Judge Eaton elaborated in his sentencing order in this case, in explaining why the jury recommendation of death is “essentially meaningless” to him without specific findings:
Defense counsel raised several constitutional arguments in his pretrial motions and in his sentencing memorandum. The court chooses to discuss some of them because they are issues that are of concern to the Court in deciding the sentence to be imposed in this case.
Florida’s death penalty scheme places certain duties upon the trial judge in determining whether to impose the death penalty or a sentence of life imprisonment without possibility of parole.
One of the duties placed upon the trial judge is to give the recommendation of the jury “great weight,” unless circumstances not applicable here allow lesser weight. See Muhammad v. State, 782 So.2d 343 (Fla.2001). However, a definition of this subjective term, “great weight,” is not contained in the statute or the case law. The most that can be said about the guidance the Supreme Court of Florida has given to the trial courts in applying this term is that when a jury returns a life recommendation, “great weight” almost always precludes the imposition of a death sentence, Smith v. State, 866 So.2d 51 (Fla.2004), while “great weight” does not preclude the *26 trial judge from disagreeing with a death recommendation and imposing a life sentence. Tompkins v. State, 872 So.2d 230 (Fla.2008). How “great” is the weight when the members of the jury cannot agree unanimously on the recommended sentence? Should a seven to five vote for death be given the same weight as a unanimous vote? These are issues the trial courts deal with in capital cases.
The role of the jury during the penalty phase under the Florida death penalty scheme has always been confusing. The jury makes no findings of fact as to the existence of aggravating or mitigating circumstances, nor what weight should be given to them, when making its sentencing recommendation. The jury is not required to unanimously find a particular aggravating circumstance exists beyond a reasonable doubt. It makes the recommendation by majority vote, and it is possible that none of the jurors agreed that a particular aggravating circumstance submitted to them was proven beyond a reasonable doubt. The jury recommendation does not contain any interrogatories setting forth which aggravating factors were found, and by what vote; how the jury weighed the various aggravating and mitigating circumstances; and, of course, no one will ever know if one, more than one, any, or all of the jurors agreed on any of the aggravating and mitigating circumstances. It is possible, in a case such as this one, where several aggravating circumstances are submitted, that none of them received a majority vote. This places the Court in the position of not knowing which aggravating and mitigating circumstances the jury considered to be proven and provides little, if any, guidance in determining a sentence. In fact, the trial judge is prohibited by law from requiring the jury to make findings through a verdict containing special interrogatories. State v. Steele, 921 So.2d 538 (Fla.2006). Accordingly, absent a recommendation for life, the jury recommendation is essentially meaningless to the trial judge, especially if the parties present additional aggravating and mitigating circumstances at the Spencer [v. State, 615 So.2d 688 (Fla.1993)] hearing.
After the jury renders its recommendation, the trial judge is required by law to independently find the existence of aggravating and mitigating circumstances. The Statute provides, “Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is imposed.” Sec. 921.141, Fla. Stat. (2005).
There is no question about the trial court’s duty to make findings independent from those made by the jury. The Supreme Court of Florida has made that clear on a number of occasions. Recently, the Court stated, “[h]owever, we remind judges of their duty to independently weigh aggravating and mitigating circumstances. A sentencing order should reflect the trial judge’s independent judgment about the existence of aggravating and mitigating factors and the weight each should receive.” Blackwelder v. State, 851 So.2d 650, 653 (Fla.2003).
Since the jury makes no findings whatsoever, and only delivers a sentence recommendation, the question *27 arises as to what “great weight” truly means. The Court concludes that when a jury returns a recommendation for the death penalty, “great weight” simply means the trial judge is not precluded from considering that option. As has been observed by the United States Supreme Court, “[a] Florida trial court no more has the assistance of a jury’s findings of fact with respect to sentencing issues than does a trial judge in Arizona. Walton v. Arizona” 497 U.S. 639, 648[, 110 S.Ct. 3047, 111 L.Ed.2d 511] (1990).
Florida trial judges are bound to follow the precedent laid down by the Supreme Court of Florida. That Court has taken the position that the Florida capital punishment scheme is constitutionally valid unless and until the United States Supreme Court declares otherwise. Marshall v. Crosby, 911 So.2d 1129 (Fla.2005). Following that precedent, knowing the obvious due process problems with Florida’s death penalty scheme, certainly tests the resolve of trial judges, who must decide who will live and who will die. See Ring v. Ariz., 536 U.S. 584[, 122 S.Ct. 2428, 153 L.Ed.2d 556] (2002).
That being said, this Court will use the tools available under the present law in deciding the penalty to be imposed in this case.
Aguirre-Jarquin v. State, 9 So.3d 593, 610-12 (Fla.2009) (Pariente, J., specially concurring). Judge Eaton has thus “eloquently explained why special verdict forms would assist trial judges in assessing jury recommendations of death.” Id. at 613.
I continue to believe that this Court has the authority to require special interrogatories and since the Court does not believe that it has that authority, I urge, as did Justice Cantero before me, that there be changes to the death penalty statute to allow for the use of special verdict forms. See Steele, 921 So.2d at 545-46.
LABARGA and PERRY, JJ., concur.
APPENDIX
7.11 PENALTY PROCEEDINGS— CAPITAL CASES
921.141, Fla. Stat.

Give la at the beginning of penalty proceedings before a jury that did not try the issue of guilt. Give bracketed language if the case has been remanded by the supreme court for a new penalty proceeding. See Hitchcock v. State, 673 So.2d 859 (Fla. 1996). In addition, give the jury other appropriate general instructions.

1. a. Ladies and gentlemen of the jury, the defendant has been found guilty of Murder in the First Degree. [An appellate court has reviewed and affirmed the defendant’s conviction. However, the appellate court sent the case back to this court with instructions that the defendant is to have a new trial to decide what sentence should be imposed.] Consequently, you will not concern yourselves with the question of [his] [her] guilt.

Give lb at beginning of penalty proceedings before the jury that found the defendant guilty.

b. Ladies and gentlemen of the jury, you have found the defendant guilty of Murder in the First Degree.

For murders committed prior to May 25, 199 Jt, the penalties were different; therefore, for crimes committed before that date, the following instruction should be 
*28
modified to comply with the statute in effect at the time the crime was committed.

2. The punishment for this crime is either death or life imprisonment without the possibility of parole. The Ffinal decision as to what which punishment shall be imposed rests solely-with the judge of this court; however, the law requires that you, the jury, render to the court an advisory sentence as to what which punishment should be imposed upon the defendant.
For murders eommutted prior-to May ⅜⅛, — 3MJt,—the penalties were — different-? therefore, for cfimes-eommitted before that date, this instruetion should he-modified to comply with the statute in effect at the time-ihe- crime was oommitteeL

Give in all cases before taking evidence in penalty proceedings.

The State and the defendant may now present evidence relative to the nature of the crime and the character, background or life of the defendant. You are instructed that

Give only to the jury that found the defendant guilty.

{this evidence when considered with the evidence you have already heard}
Give only to a new penalty phase jury. {this evidence}
is presented in order that you might determine, first, whether sufficient aggravating circumstances exist that would justify the imposition of the death penalty and, second, whether there are mitigating circumstances sufficient to outweigh the aggravating circumstances, if any. At the conclusion of the taking of the evidence and after argument of counsel, you will be instructed on the factors in aggravation and mitigation that you may consider.

Give after the taking of evidence and argument.

Ladies and gentlemen of the jury, lit is now your duty to advise the court as to the what punishment that should be imposed upon the defendant for [his] [her] the crime of First Degree Murder in the First Degree. You must follow the law that will now be given to you and render an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty or whether sufficient mitigating circumstances exist that outweigh any aggravating circumstances found to exist. The definition of aggravating and mitigating circumstances will be given to you in a few moments. As you have been told, the final decision as to what which punishment shall be imposed is the responsibility of the judge. In this case, as the trial judge, that responsibility will fall on me.; hHowever, it is your duty-to follow the law requires that will- now be given you by-the court and you to render to the court an advisory sentence based-upon your determination as to whether sufficient aggravating circumstances exist-to justify-the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating-eireumstances found to exist. as to which punishment should be imposed — life imprisonment without the possibility of parole or the death penalty.

Give only in cases where mitigation was presented to the jury by the defendant and not where mitigation was waived.

Although the recommendation of the jury as to the penalty is advisory in nature and is not binding, the jury recommendation must be given great weight and deference by the Court in *29 determining which punishment to impose.

Give only to the jury that found the defendant guilty.

Your advisory sentence should be based upon the evidence of aggravating and mitigating circumstances {that you have heard while trying the guilt or innocence of the defendant and the evidence that has been presented to you in these proceedings}, [that has been presented to you in these proceedings-],

Give only to a new penalty phase jury.

Your advisory sentence should be based upon the evidence of aggravating and mitigating circumstances that has been presented to you in these proceedings.

Weighing the evidence.

It is up to you to decide which evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence.

Credibility of witnesses.

You should consider how the witnesses acted, as well as what they said. Some things you should consider are:
1. Did the witness seem to have an opportunity to see and know the things about which the witness testified?
2. Did the witness seem to have an accurate memory?
3. Was the witness honest and straightforward in answering the attorneys’ questions?
4. Did the witness have some interest in how the case should be decided?
5. Did the witness’ testimony agree with the other testimony and other evidence in the case?
6. Had the witness been offered or received any money, preferred treatment or other benefit in order to get the witness to testify?
7. Had any pressure or threat been used against the witness that affected the truth of the witness’ testimony?
8. Did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court?
9. Was it proved that the witness had been convicted of a felony or a crime involving dishonesty?
10.Was it proved that the general reputation of the e witness for telling the truth and being honest was bad?
You may rely upon your own conclusion about a witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

Expert witnesses.

Expert witnesses are like other witnesses with one exception-the law permits an expert witness to give an opinion. However, an expert’s opinion is only reliable when given on a subject about which you believe that person to be an expert. Like other witnesses, you may believe or disbelieve all or any part of an expert’s testimony.

Give only if the defendant did not testi-6l

A defendant in a criminal case has a constitutional right not to testify at any stage of the proceedings. You must not draw any inference from the fact that a defendant does not testify.

*30
Give only if the defendant testified.

The defendant in this case has become a witness. You should apply the same rules to consideration of [his] [her] testimony that you apply to the testimony of the other witnesses.

Rules for deliberation.

These are some general rules that apply to your discussion. You must follow these rules in order to return a lawful recommendation:
1. You must follow the law as it is set out in these instructions. If you fail to follow the law, your recommendation will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make a wise and legal decision in this matter.
2. Your recommendation must be decided only upon the e evidence that you have heard from the testimony of the witnesses, [have seen in the form of the exhibits in evidence] and these instructions.
3. Your recommendation must not be based upon the fact that you feel sorry for anyone, or are angry at anyone.
4. Remember, the lawyers are not on trial. Your feelings about them should not influence your recommendation.
5. It is entirely proper for a lawyer to talk to a witness about what testimony the witness would give if called to the courtroom. The witness should not be discredited by talking to a lawyer about his or her testimony.
6. Your recommendation should not be influenced by feelings of prejudice, or by racial or ethnic bias, or by sympathy. Your recommendation must be based on the evidence, and on the law contained in these instructions.

Aggravating_circumstances. § 9Z1.UK5), Fla. Stat

An aggravating circumstance is a standard to guide the jury in making the choice between the alternative recommendations of life imprisonment without the possibility of parole or death. It is a statutorily enumerated circumstance which increases the gravity of a crime or the harm to a victim.
An aggravating circumstance must be proven beyond a reasonable doubt before it may be considered by you in arriving at your recommendation. In order to consider the death penalty as a possible penalty, you must determine that at least one aggravating circumstance has been proven.
The State has the burden to prove each aggravating circumstance beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt, a speculative, imaginary or forced doubt. Such a doubt must not influence you to disregard an aggravating circumstance if you have an abiding conviction that it exists. On the other hand, if, after carefully considering, comparing, and weighing all the evidence, you do not have an abiding conviction that the aggravating circumstance exists, or if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the aggravating circumstance has not been proved beyond every reasonable doubt and you must not consider it in rendering an advisory sentence to the court.

Give only to the jury that found the defendant guilty.

*31 It is to the evidence introduced during the guilt phase of this trial and in this proceeding, and to it alone, that you are to look for that proof.

Give only to a new penalty phase jury.

It is to the evidence introduced during this proceeding, and do it alone, that you are to look for that proof.
A reasonable doubt as to the existence of an aggravating circumstance may arise from the evidence, conflicts in the evidence, or the lack of evidence. If you have a reasonable doubt as to the existence of an aggravating circumstance, you should find that it does not exist. However, if you have no reasonable doubt, you should find that the aggravating circumstance does exist and give it whatever weight you determine it should receive.

§-m^U-l(5), Fla. Stat.

The aggravating circumstances that you may consider are limited to any of the following that you find are established by the evidence:

Give only those aggravating circumstances for which evidence has been 'presented.

1. The crime capital felony for-which (defendant-) — is - to be sentenced was committed by a while [he] [she] had been person previously convicted of a felony and [was under sentence of imprisonment] [or-]--[was on community control] [or]- [was on felony probation]?.
2. The defendant has been was previously convicted of [another capital offense felony] or-of [a felony involving the [use] [threat] of violence to some the person]?.

Because the character of a crime if involving violence or threat of violence is a matter of law, when the State offers evidence under aggravating circumstance “2” the court shall instruct the jury of the following, as applicable:

Give 2a or 2b as applicable.

a. The crime of (previous crime) is a capital felony?.
b. The crime of (previous crime) is a felony involving the [use] [threat] of violence to another person?.
3. The defendant, in committing the crime for which [he] [she]-is-to be sentenced, knowingly created a great risk of death to many persons?.
4. The crime capital felony for which the defendant-is-to be sentenced was committed while [he] [she] the defendant was
[engaged]
[an accomplice]
in
[the commission of]
[an attempt to commit]
[flight after committing or attempting to commit]
the-crime of any

Check § 921.1Ul(5)(d), Fla. Stat., for any change in list of offenses.

[robbery].
[sexual battery].
[aggravated child abuse].
[abuse of an elderly person or disabled adult resulting in great bodily harm, permanent disability, or permanent disfigurement].
[arson].
[burglary].
[kidnapping].
[aircraft piracy]. *32 [the unlawful throwing, placing or discharging of a destructive device or bomb].
5. The crime capital felony for which the defendant is to be sentenced was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
6. The crime capital felony for which the defendant is to be sentenced was committed for financial gain.
7. The crime capital felony for which the defendant is to be sentenced was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
8. The crime capital felony for which the-defendant is to be sentenced was especially heinous, atrocious or cruel.
“Heinous” means extremely wicked or shockingly evil.
“Atrocious” means outrageously wicked and vile.
“Cruel” means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others.
The kind of crime intended to be included as heinous, atrocious, or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim.
9. The crime capital felony for which the defendant is to be-sentenced was a homicide and was committed in a cold, and calculated, and premeditated manner, and without any pretense of moral or legal justification,
“Cold” means the murder was the product of calm and cool reflection.
“Calculated” means having a careful plan or prearranged design to commit murder.
[As I have-previously-defined for you], a A killing is “premeditated” if it occurs after the defendant consciously decides to kill. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
However, in order for this aggravating circumstance to apply, a heightened level of premeditation, demonstrated by a substantial period of reflection, is required.
A “pretense of moral or legal justification” is any claim of justification or excuse that, though insufficient to reduce the degree of murder, nevertheless rebuts the otherwise cold, calculated, or premeditated nature of the murder.
10. The victim of the crime capital felony for which defendant is to be sentenced was a law enforcement officer engaged in the performance of the -officers [his] [her] official duties.
11. The victim of the crime capital felony for which the-defendant is to be sentenced was an elected or appointed public official engaged in the performance of [his] [her] official duties, and if the crime motive for the capital felony was related, in whole or in part, to the victim’s official capacity.
*33 12. The victim of the capital felony was a person less than 12 years of age.
13. The victim of the capital felony was particularly vulnerable due to advanced age or disability, or because the defendant stood in a position of familial or custodial authority over the victim.

With the following aggravating factor, definitions as appropriate from § 87⅛.03, Fla. Stat., must be given.

14. The capital felony was committed by a criminal street gang member.

§ 921.U1, Fla. Stat.

15. The capital felony was committed by a person designated as a sexual predator or a person previously designated as a sexual predator who had the sexual predator designation removed.

Merging aggravating factors.

Give the following paragraph if applicable. When it is given, you must also give the jury an example specifying each potentially duplicitous aggravating circumstance. See Castro v. State, 597 So.2d 259 (Fla. 1992).

The State may not rely upon a single aspect of the offense to establish more than one aggravating circumstance. Therefore, if you find that two or more of the aggravating circumstances are proven beyond a reasonable doubt by a single aspect of the offense, you are to consider that as supporting only one aggravating circumstance.
If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole.

Mitigating circumstances. § 921. HI (6), Fla. Stat.

Should you find sufficient aggravating circumstances do exist to justify recommending the imposition of the death penalty, it will then be your duty to determine whether the mitigating circumstances outweigh the mitigating aggravating circumstances that you find to exist, that outweigh the aggravating circumstances. — Among- the mitigating circumstances you may- consider, if established by-the evidence, are:
A mitigating circumstance is not limited to the facts surrounding the crime. It can be anything in the life of the defendant which might indicate that the death penalty is not appropriate for the defendant. In other words, a mitigating circumstance may include any aspect of the defendant’s character, background or life or any circumstance of the offense that reasonably may indicate that the death penalty is not an appropriate sentence in this case.
A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. A mitigating circumstance need only be proved by the greater weight of the evidence, which means evidence that more likely than not tends to prove the existence of a mitigating circumstance. If you determine by the greater weight of the evidence that a mitigating circumstance exists, you may consider it established and give that evidence such weight as you determine it should receive in reaching your conclusion as to the sentence to be imposed.
Among the mitigating circumstances you may consider are:

Give only those mitigating circumstances for which evidence has been presented.

*34 1. (Defendant-) The defendant has no significant history of prior criminal activity*.

If the defendant offers evidence on this circumstance and the State, in rebuttal, offers evidence of other crimes, also give the following:

Conviction of (previous crime) is not an aggravating circumstance to be considered in determining the penalty to be imposed on the defendant, but a conviction of that crime may be considered by the jury in determining whether the defendant has a significant history of pri- or criminal activity.
2. The crime capital felony for which the defendant is to be sentenced was committed while [he] [she] the defendant was under the influence of extreme mental or emotional disturbance*.
3. The victim was a participant in the defendant’s conduct or consented to the act*.
4. The defendant was an accomplice in the offense -for which [he] [she] is to be sentenced but the offense was capital felony committed by another person and the defendants [his] [her] participation was relatively minor*.
5. The defendant acted under extreme duress or under the substantial domination of another person*.
6. The capacity of the defendant to appreciate the criminality of [his] [her] conduct or to conform [his] [her] conduct to the requirements of law was substantially impaired*.
7. The age of the defendant at the time of the crime*.

Both 8a and 8b must be-given unless the defendant requests otherwise-

8.Any — of—the—following—circumstances The existence of any other factors in the defendant’s character, background or life, or the circumstances of the offense that would mitigate against the imposition of the death penalty*.
a, — Any [other]-aspect of the defendant’s character, record, or background,
b, — Any other circumstance of the offense.
Each-aggravating circumstance must be — established beyond — a—reasonable doubt before it may be considered by you in-arriving at your decision.
If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you determine it should receive in reaching your conclusion as to the sentence that should be imposed.

Give before a new 'penalty phase-jury-

[A reasonable doubt-ds not a mere possible-doubt, a speculative, imaginary or forced-doubt. Such a doubt must not influence you to disregard an aggravating circumstance if-you have-an-abiding conviction that it exists. — On the other -hand, if, after carefully considering, comparing, and — weighing all the evidence,-you do-mot — have an abiding conviction that the aggravating circumstance-exists, or-if, having a conviction, it is one which is not -stable but one which-wavers and vacillates, then -the aggravating circumstance has not been proved- beyond a reasonable doubt- and you should disregard it, because the doubt is reasonable.
It is to the evidence introduced in this proceeding, and to it alone, that you are to look for that proof.
*35 A reasonable doubt as to the existence of — an aggravating circumstance may arise from the evidence, conflicts-in the evidence-or- the lack of-evidenGe.
If you have a reasonable-doubt as to the existence of an aggravating circumstance, you should find- that it does not exist. — However) if you have no reasonable — doubt, you should find that the aggravating circumstance-does exist and give it whatever weight you feel determine-it should receive.}
If one or more aggravating circumstances — are—established, you — should consider all the evidenee-tending-to-es-tablish one or more mitigating circumstances — and give that — evidence such weight as you feel it should receive in reaching ytmr conclusion-as to the sentence that should be imposed.
A^mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. — If you are reasonably convinced that — a mitigating — circumstance exists, you may — Gonsider it as established.

Victim impact evidence. Give 1, or 2, or 3, or all as applicable.

You have heard evidence about the impact of this homicide on the
1. family,
2. friends,
3. community
of (decedent). This evidence was presented to show the victim’s uniqueness as an individual and the resultant loss by (decedent’s) death. However, you may not consider this evidence as an aggravating circumstance. Your recommendation to the court must be based on the aggravating circumstances and the mitigating circumstances upon which you have been instructed.

Recommended sentence.

The sentence that you recommend to the court must be based upon the facts as you find them from the evidence and the law. If, after weighing the aggravating and mitigating circumstances, you determine that at least one aggravating circumstance is found to exist and that the mitigating circumstances do not outweigh the aggravating circumstances, or, in the absence of mitigating factors, that the aggravating factors alone are sufficient, you may recommend that a sentence of death be imposed rather than a sentence of life in prison without the possibility of parole. Regardless of your findings in this respect, however, you are neither compelled nor required to recommend a sentence of death. If, on the other hand, you determine that no aggravating circumstances are found to exist, or that the mitigating circumstances outweigh the aggravating circumstances, or, in the absence of mitigating factors, that the aggravating factors alone are not sufficient, you must recommend imposition of a sentence of life in prison without the possibility of parole rather than a sentence of death.
The process of weighing aggravating and mitigating factors to determine the proper punishment is not a mechanical process. The law contemplates that different factors may be given different weight or values by different jurors. In your decision-making process, you, and you alone, are to decide what weight is to be given to a particular factor.
In these proceedings it is not necessary that the advisory sentence of the jury be unanimous.
The fact that the jury can determina-tien-of whether you recommend a sentence of death or sentence of life imprisonment life imprisonment or death in *36 this case can be reached by-a on a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot you should carefully weigh, sift, and consider the evidence, and all of it, realizing that human life is at stake, and bring to- bear your best judgment to bear in reaching your advisory sentence.
If a majority of the jury, seven or more, determine that (defendant) should be sentenced to death, your advisory sentence will be:
A majority of the jury by a vote of _, to_advise and recommend to the court that it impose the death penalty upon (defendant).
On the other hand, if by six or more votes the jury determines that (defendant) should not be sentenced to death, your advisory sentence will be:
The jury advises and recommends to the court that it impose a sentence of life imprisonment upon (defendant) without possibility of parole.
When you have reached an advisory sentence in conformity with these instructions, that form of recommendation should be signed by your foreperson, dated with today’s date and returned to the court. There is no set time for a jury to reach a verdict. Sometimes it only takes a few minutes. Other times it takes hours or even days. It all depends upon the complexity of the case, the issues involved and the makeup of the individual jury. You should take sufficient time to fairly discuss the evidence and arrive at a well reasoned recommendation.
You will now retire to consider your recommendation as to the penalty to be imposed upon the defendant. When you have-r-eached an advisory sentence in conformity with these instructions,-that form — of—recommendation—should—be signed by your foreperson and returned to the court,
Comment
This instruction was adopted in 1981 and amended in 1985 [477 So.2d 985], 1989 [543 So.2d 1205], 1991 [579 So.2d 75], 1992 [603 So.2d 1175], 1994 [639 So.2d 602], 1995 [665 So.2d 212], 1996 [678 So.2d 12241
1997 r690 So.2d 12631, and 1998 [723 So.2d 123], and 2009.